Caroline H. Baxter & others *vs.* James C. Abbott.

Upon the trial of an issue of the sanity of a testator, a physician who had practised for
many years in his neighborhood, and had at times been his medical adviser, and who
saw and conversed with him a short time before the making of his will, is competent to
state his opinion of the testator's sanity, though he has not made mental disease a spe-
cial study.

The erroneous rejection of the opinion of a witness is ground for a new trial upon a bill of
exceptions in which all the circumstances are reported.

Insanity of the testator's parents, and of an uncle, is competent evidence upon the trial of
an issue of his sanity.

On the trial of an appeal from a decree of the probate court allowing a will, it cannot be
given in evidence against the will that one of the attesting witnesses, who testified in
the probate court to the testator's sanity, and has since deceased, declared, after the
probate, that he wished to live to unsay what he had said, and that the testator was
insane.

The attestation of a will is no evidence that the witness believed the testator to be sane.

A witness, who has stated the appearance and conduct of a testator, tending to show his insanity at the time of making his will, and has testified that he refused to make for the testator a bond for the conveyance of land, but, after a private conversation with the obligee, aside from the testator, did make it, may testify, on reëxamination, that the obligee then told him that the bond was intended to secure the land for the testator until he should come to himself.

Under the *St.* of 1839, *c.* 107, § 2, an executor named in an instrument offered for probate as a'will was a competent witness in support of it, on releasing his right to recover costs.

In the absence of evidence to the contrary, the legal presumption is in favor of the sanity of a testator. THOMAS, J. dissenting.

APPEAL from a decree of the judge of probate allowing an instrument, bearing date November 28th 1853, as the last will of Jonathan F. Parker of Westford.

At April term 1856 *Metcalf*, J. submitted the case to a jury upon two issues—the sanity of the testator, and undue influence —and signed the following bill of exceptions :

" The appellee presented said instrument in evidence, and the deposition of Daniel J. Murphy, a subscribing witness thereto, and called Daniel Proctor, Jr. another subscribing witness, each of whom testified to the formal execution of said instrument, and to their opinions of the testator's sanity at the time. Said Proctor also testified that Samuel Scott, another subscribing witness, (who was dead at the time of this trial,) put his name to said instrument in the testator's presence. The appellee then rested his case.

" The appellants then called Benjamin Osgood, a physician, who testified to the conversation and conduct of the testator in August and in the autumn of 1853, before November 28th. The appellants' counsel proposed to ask this witness his opinion whether the testator was sane or insane, the few months next preceding the execution of said instrument. It appeared, on examination of the witness, that he had been a practising physician many years in the neighborhood of the testator's family, and had at times been his medical adviser ; that he never had charge of insane persons, except such cases as ordinarily occur in medical practice ; and that he uniformly advised that patients, in whom insanity appeared to be developed, should be sent to an asylum.

" The court ruled that the testimony of the witness, as to his opinion respecting the testator's sanity or insanity, was inadmissible; he not being an expert on those subjects, merely by reason of his being a physician.

" The appellants' counsel then proposed to show, by the testimony of the same witness, that the testator's family, both on his father's and the mother's side, were subject to insanity, and that his father and mother and an uncle of his were insane. But the court ruled that testimony to these facts was inadmissible.

" The appellants' counsel then offered to prove that Samuel Scott, the deceased subscribing witness, shortly before his death, declared his opinion that the testator was insane at the time of executing the will, and had no knowledge of its contents ; and that he (said Scott) wished to live to unsay what he had said and testified to in the probate court in favor of the testator's sanity. But the court excluded the offered testimony.

" The appellants introduced Eli F. Webster as a witness, and he testified concerning the conduct and appearance of the testator in November 1853 ; and that he (the witness) made a bond for a deed from the testator to George L. Hutchins of a piece of land of about a hundred acres ; that the witness refused, at first, to make the bond, but that after a private conversation with said Hutchins, aside from the testator, he made the bond.

" The counsel for the appellants then offered to show by the witness (for the purpose of explaining his conduct in writing a bond for a man in the condition in which he had described the testator to have been) that in the conversation with Hutchins the witness was assured by Hutchins that he was taking the bond only for the purpose of keeping the land safely for the testator until he should come to himself. The court refused to receive this evidence.

" The executor named in the will, and the appellee in this case, [and special administrator, as was admitted at the argument,] and who wrote it, (having released his claims for costs against the appellants,) was permitted to testify in support of the will, the appellants objecting to his competency.

" The court instructed the jury (among other things to which no exception was taken) that the burden of proof was on the appellee to show, to their reasonable satisfaction, that the testator was of sound mind when he executed the instrument in question ; that the legal presumption, in the absence of evidence to the contrary, was in favor of the testator's sanity, and that the appellee was entitled to the benefit of this presumption in sustaining the burden of proof which the law put upon him ; but that this presumption might be rebutted by evidence which should satisfy the jury of the testator's unsoundness of mind.

" There was also evidence tending to show that the testator, some time before the making the will, was insane; and the court instructed the jury that the presumption was that he remained insane, if he was once proved so, until he was shown to be sane.

" The court also instructed the jury that proof of Samuel Scott's having signed as a witness to the will should be taken as evidence of Scott's having been of opinion, when he so signed his name, that the testator was of sound mind ; but that of the weight of this last fact, and of all the other evidence in the case, the jury were to judge.

" The jury returned a verdict supporting the will.  And the appellants alleged exceptions to the foregoing rejection and admission of testimony, and to said instructions to the jury."

*J. G. Abbott,* for the appellants.  1. Dr. Osgood should have been permitted to state his opinion of the testator's sanity.   He had been the testator's medical adviser, and seen and talked with him a little while before the execution of the will ; and his opinion was worth more than that of a keeper of insane persons, who had never seen the testator.   Any regularly educated physician is a competent witness upon this point.   It is unsafe and impracticable for the court to inquire into the degree of experience, skill and science of each physician offered as a witness ; the jury must be left to make a proper discrimination. Best on Ev. § 496.   *Mendum* v. *Commonwealth,* 6 Rand. 704. *Tullis* v. *Kidd,* 12 Alab. 650.   *Washington* v. *Cole,* 6 Alab. 212.

Instead of limiting the right to give opinions, upon the ques

tion of sanity, to keepers of lunatic asylums, the rule should rather be relaxed, so as to permit any witness to state his opinion, with the facts and circumstances on which it is based ; as has been done in most states. *Lester* v. *Pittsford,* 7 Verm. 161. *Morse* v. *Crawford,* 17 Verm. 499. *Clark* v. *State,* 12 Ohio, 483. *Clary* v. *Clary,* 2 Ired. 78. *Doe* v. *Reagan,* 5 Blackf. 217. *Culver* v. *Haslam,* 7 Barb. 314. *De Witt* v. *Barley,* 13 Barb. 550.

2. The evidence of insanity in the testator's parents and family should have been received. It is a well established fact, sustained by general experience, that insanity is a disease, frequently hereditary ; and the existence of insanity in immediate ancestors is not only competent, but strong and controlling evidence. Such evidence has been admitted in this commonwealth and in New Hampshire in capital cases ; and in England in cases of wills. *Tyrell* v. *Jenner,* 2 Hagg. Eccl. 72. *Frere* v. *Peacocke,* 3 Curt. Eccl. 664.

3. After evidence of Scott's signature as an attesting witness, and of his death, evidence of his declarations as to the circumstances attendant upon the attestation should have been admitted. Otherwise, the fact of his having attested the will would have greater weight than his testimony, if alive and on the stand ; for then he might be controlled and contradicted by his former admissions and declarations. The evidence was rejected upon the authority of the single case of *Stobart* v. *Dryden,* 1 M. & W. 615, which is contrary to other English authorities, and has not been recognized as law in the United States. *Provis* v. *Reed,* 5 Bing. 435. *Doe* v. *Stephenson,* 3 Esp. R. 284. *Doe* v. *Walker,* 4 Esp. R. 50. *Aveson* v. *Kinnaird,* 6 East, 198. *Bishop of Durham* v. *Beaumont,* 1 Campb. 210. *Wright* v. *Littler,* 3 Bur. 1244. *Doe* v. *Ridgway,* 4 B. & Ald. 55. 2 Stark. Ev. (4th Amer. ed.) 463. *Harden* v. *Hays,* 9 Barr, 155, 156. *Crouse* v. *Miller,* 10 S. & R. 155. *Losee* v. *Losee,* 2 Hill, (N. Y.) 609, *& note. M'Elwee* v. *Sutton,* 2 Bailey, 128. *Gardenhire* v. *Parks,* 2 Yerg. 23. *Vandyke* v. *Thompson,* 1 Harringt. (Del.) 109.

The evidence rejected was the more necessary under the instruction to the jury that Scott's signature was evidence that in

his opinion the testator was of sound mind. But that instruction, too, was erroneous; for his signature was simply proof that he attested the will in the manner required by law; and the law does not require the witness to know that it is a will that he is attesting, or to form or have any opinion as to the person whose signature he attests. *Osborn* v. *Cook,* 11 Cush. 532. *Flanders* v. *Davis,* 19 N. H. 148. *Stobart* v. *Dryden,* 1 M. & W. 615.

4. Webster having described the acts and condition of the testator when he made a bond for him, it became important to show, as affecting his credibility, whether the bond was made *bona fide,* or merely for the purpose of humoring an insane person; and for this purpose the assurance of the grantee was competent, as part of the *res gestæ.*

5. The executor named in the will was not a competent witness. This trial was had before the passage of *St.* 1856, *c.* 188 He was not within the provision of *St.* 1839, *c.* 107, § 2, that " any executor who may be a party to any suit at law or in equity, having no interest therein, except such as arises from his liability for costs and expenses of suit, may be a witness in such suit, to any matter known to him before he assumed the trust of his appointment," on releasing his right to recover costs ; for he was not an " executor;" but the question on trial was whether he should ever assume that character.

6. The ruling, that the legal presumption was that the testator was sane, was erroneous, and would go far to nullify the established rule that the burden of proving sanity is upon the party setting up the will. *Crowninshield* v. *Crowninshield,* 2 Gray, 532. *Gerrish* v. *Nason,* 22 Maine, 441.

*B. F. Butler,* for the appellee. 1. Dr. Osgood's opinion was rightly rejected, because he was not an expert. Merely being a physician does not prove skill in insanity ; that being now a separate branch of medical science. He disqualified himself by saying that he advised all such patients to go to the hospital, without undertaking their cases.

The question of the fitness of the proposed expert to give an opinion is always within the discretion of the presiding judge

upon all the circumstances, and not a matter of exception *M' Naghten's case*, 10 Cl. & Fin. 200–212.

2. The evidence of insanity in the testator's family was rightly rejected ; because it tends to the multiplication of collateral issues which the appellee had no notice of, and cannot be supposed to be prepared to try ; and because it is too remote.   In order to authorize its admission, its necessary connection with a like mental disease in the testator must be proved, like any other fact ; and no such evidence was here offered as a foundation for the evidence proposed.   Although this evidence has sometimes been admitted in capital cases, *in favorem vitæ*, in this country, and in England, (*Regina* v. *Oxford*, 1 Townsend's State Trials, 125, 148,) so have medical books been permitted to be read to the jury in such cases—a pernicious practice now exploded *Commonwealth* v. *Wilson*, 1 Gray, 338.   *Ashworth* v. *Kittredge* 12 Cush. 193.

3. Scott's declarations, made not under oath, and without opportunity of cross-examination or explanation, were properly rejected.   *Stobart* v. *Dryden*, 1 M. & W. 615.   *M'Elwee* v. *Sutton*, 2 Bailey, 128.   *Gaither* v. *Gaither*, 3 Maryland Ch. 158. *Commonwealth* v. *Waite*, 5 Mass. 262.   Such declarations have never been admitted, except on subjects which the witness must have been inquired of, if present, or be proved by his handwriting, if absent.   But attesting witnesses need not be asked as to the sanity of the testator by the party offering a will for probate ; and a will may be proved against the opinion of one or more of the subscribing witnesses.   *Crowninshield* v. *Crowninshield*, 2 Gray, 529.   Declarations of opinion or belief are not admissible, though made *in articulo mortis*.   *State* v. *Poll*, 1 Hawks, 442.   2 Stark. Ev. (4th Amer. ed.) 461.   His declarations are inadmissible to establish the will.   *Collins* v. *Nicols*, 1 Har. & Johns. 399.   Much less his declarations of having done wrong to defeat it.

The instruction as to the effect of Scott's signature to the will was in accordance with the maxim *Omnia rite acta presumuntur*, and was sufficiently guarded.   *Wright* v. *Tatham* 1 Ad. & El. 3.

7 *

4. The conversation of Hutchins with Webster was mere hearsay, and an attempt to sustain a witness who was not impeached. If the conversation had been relevant, Hutchins should have been called to prove it. But it was no part of the *res gestæ*, but a mere declaration of a third person, not communicated to the testator.

5. The executor and special administrator having released any right to recover costs, was a competent witness. *St.* 1839, *c.* 107, § 2. *Sears* v. *Dillingham,* 12 Mass. 358. If he was not an executor or administrator, within that statute, he was not a party to the suit, and was competent without a release.

6. The instruction as to the presumption of sanity was exactly according to the opinion of this court in *Crowninshield* v. *Crowninshield,* 2 Gray, 532. But if erroneous, it was cured by the subsequent instruction that the presumption was that the testator, if proved to have been once insane, remained so.

As this is a case in which the issue to the jury is only to instruct the conscience of the court, the verdict will not be disturbed, if satisfactory on the main points.

THOMAS, J. 1. The court are of opinion that the opinion of the physician should have been admitted. We think the settled practice in this commonwealth has been to admit the opinion of educated, practising physicians upon subjects of medical science. Until quite a recent period, the disease of insanity has not been made a specialty. That it is now made a special study by a small number of physicians may be a good reason for giving to their opinion greater weight; but it is not a sufficient reason for excluding the opinions of other physicians. It is well known that various classes of diseases, as those of the spine, the eye, the ear, the skin, have become specialties, especially in our larger cities, where such division of labor becomes practicable. But this fact does not render incompetent upon these subjects the testimony of other physicians, who must necessarily have less experience. The difference is in the weight, rather than the competency of the testimony.

Even upon the matter of weight, there are one or two suggestions which will not escape the attention of those reflecting

upon the subject. Those who have been accustomed to try issues involving the sanity of testators, their capacity to make wills, will have observed that in a large proportion of the cases the alleged want of capacity is in the infirmity and decay of the faculties, resulting from old age, or the weakness and prostration of disease, or from the two combined. The cases of distinct delusion are quite rare and exceptional. The far greater number of issues as to sanity therefore fall within the ordinary range of a physician's practice. A physician of large experience could scarcely be found, who had not been often called to consider and form an opinion upon the capacity of his patients to make wills. Supposing the question was as to the gradual decay of the faculties of the testator from disease or old age, one cannot but see that the opinion of an intelligent family physician, familiar with his patient's infirmities, and watching them at every stage of their progress, would and should have far greater weight with a jury than that of any number of physicians who had made insanity a special study, but who were called to give an opinion upon what is always, and necessarily, an imperfect statement of the facts and symptoms. Or, if the case were one of an original defective capacity, the judgment and opinion of the old family physician would be worth more than that of the masters of the science of insanity, who can have but a fragment of his history.

All lawyers know how difficult it is to try issues of sanity with the restrictions as to matters of opinion already existing; how hard it is to make witnesses distinguish between matters of fact and opinion on this subject; between the conduct and traits of character they observe, and the impression which that conduct and those traits create, or the mental conclusion to which they lead the mind of the observer. If it were a new question, I should be disposed to allow every witness to give his opinion, subject to cross-examination upon the reasons upon which it is based, his degree of intelligence, and his means of observation. It is at least unwise to increase the existing restrictions.

To adopt the limitation made by the rule of the presiding

judge would be to confine opinion on questions of insanity to those physicians who have made insanity a special study and pursuit. As most cases of insanity are treated in hospitals and public institutions, the limitation would practically confine parties to physicians who were or had been engaged in those institutions. The number of these is so small, and their attendance so difficult to be procured, that the limitation would be in effect an exclusion of matters of opinion upon subjects where it is difficult even for the best trained minds to distinguish and adhere to the line which separates opinion from fact. For with respect to the powers and faculties of the mind, it is obvious, we can directly know nothing. We know them only as they are manifested in action.

Nor, if the opinions of persons who have made the subject of mental disease a special study could be had, would it be wise to limit matters of opinion exclusively to them. Large as is the debt which science and humanity owe to them, great as are the advantages which spring from the devotion of the mind to a special study, a not infrequent result is—what it used to be said was the mark of a good judge—a tendency to enlargement of jurisdiction. As it is, it cannot be wholly avoided.

To put upon the stand a skilful physician, (and such an one has never understood the bodies of his patients unless he has known also something of their minds, and the action of one upon the other,) to get from him the history of his patient, the state of his bodily health, his conversation, conduct, traits of character in sickness and in health, and then to exclude the opinion which, as the result of all, his mind has almost insensibly and necessarily formed , and yet, upon this imperfect history of his patient, to ask a perfect stranger to that patient to give his opinion of his mental condition, because he has made mental disease a special study ; would be to reject the most valuable evidence, for that which, in the nature of things, must be of far less worth. Upon a subject of such intrinsic difficulty, the jury should have the aid and assistance of both.

In the case at bar, the doctor had been the medical adviser of the deceased, as well as a physician of experience. The precise

point decided is, that his opinion as to the sanity of his patient should have been admitted in evidence.

It is suggested in the argument of the appellees, that the question whether the witness is an expert or not is, under all the facts, one to the discretion of the court. In this case, it is sufficient to say the facts are reported and the point reserved by the presiding judge. But the decision involves not merely a judgment upon the facts before the judge, but a general rule applicable to the trial of all similar causes. It is therefore a question of law for the consideration of the whole court.

2. The appellants' counsel offered to show by the same witness that the testator's family, both on his father's and mother's side, were subject to insanity, and that his father and mother and an uncle of his were insane. But the presiding judge ruled that the testimony to these facts was inadmissible.

We think the practice has been to admit such evidence. See, among other cases, Trial of Rogers, 144. We think the practice is right in principle. It rests upon the ground of the hereditary character of insanity, that a predisposition to the disease is frequently transmitted from parent to child. With such predisposition, the malady may not show itself in the child ; for the child may not be exposed to any exciting cause. But with such hereditary taint, insanity supervenes from slight causes— causes apparently wholly inadequate to affect a mind without the predisposition. In making a diagnosis of such a case, we suppose that among the first questions which would be put would be, whether the parents of the patient were or had been insane. With the fact that the father and mother, or either of them, had been insane ; that the insanity had appeared in them about the same age, and in the same form ; its existence in the child is rendered more probable, and is believed upon less perfect evidence.

The transmission of this predisposition to insanity is matter of general observation, and is recognized by the best medical authorities. Esquirol says this hereditary taint is the most common of all the causes to which insanity can be referred. Esquirol on Mental Maladies, translated by Hunt, 49. See also

1 Beck's Med. Jur. (10th ed.) 725; Taylor's Med. Jur. (Eng. ed.) 629; Ray's Med. Jur. § 72; Combe on Mental Derangement, (Amer. ed.) 96, who says, that authors who differ on all other points agree in this. See also *Frere* v. *Peacocke,* 3 Curt. Eccl. 664.

3. The evidence of the declarations of Scott, the deceased subscribing witness to the will, was rightly excluded. The fact that he attested the will as a witness does not, we think, furnish evidence of any opinion he had as to the sanity of the testator. He may have had no opinion on tne subject. He may have attested the will with the full belief that the testator was insane, and with the view of testifying to that opinion whenever the will should be offered for probate. No inference as to his opinion can be drawn from the mere fact of signing; and therefore evidence of a contradictory opinion expressed by him was inadmissible. The instruction of the presiding judge on this point, cannot, we think, be sustained.

4. The witness Webster having testified to facts, as to the conduct and appearance of the testator in November, tending to show insanity, also testified, we suppose on cross-examination, that he made a bond for a deed from the testator to one Hutchins; that he at first refused to make the bond, but after a conversation with Hutchins, aside from the testator, concluded to do so. The effect of this fact was doubtless to control the evidence before given; practically, and in the most forcible way, to contradict him. He should therefore have been permitted to state the reasons which induced him to make the bond, and thus to show that the apparent inconsistency in his conduct was not real; that the object and purpose of himself and the obligee, in the making of the bond, were consistent with their belief in his legal incapacity to convey his estate. It was not conversation with other third parties. It was strictly part of the *res gestæ,* giving character to the act done, by showing with what motives and for what purposes it was done.

5. The appellee, the person named in the will as executor, was clearly competent as a witness after his release of the costs. *St.* 1839, *c.* 107, § 2. The statutes passed since the trial have

made him a competent witness, on another trial, without such release.  *Sts.* 1856, *c.* 188 ; 1857, *c.* 305.

6. A majority of the court think the instruction to the jury, that the legal presumption, in the absence of evidence to the contrary, was in favor of the sanity of the testator, was correct. We all agree that it does not change the burden of proof, and that this always rests upon those seeking the probate of the will. See *Crowninshield* v. *Crowninshield,* 2 Gray, 532.  The opinion in that case expresses my own view as to the existence of the legal presumption.  *Exceptions sustained.*